JOE PEREZ v. STATE.

No. A-7911.    Opinion Filed June 12, 1931.
(300 Pac. 428.)

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Comanche county of the crime of manslaughter in the first degree, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of 10 years.

The undisputed evidence in the case appears to be that defendant, who is a Mexican, had recently come to the town of Lawton, as a cotton picker, and was boarding at a restaurant operated by a Mexican woman named Petero Moralez; that on the evening of the homicide defendant came into the restaurant and was sitting there waiting for his evening meal; that the deceased, Perfecto Moralez, came into the restaurant and said to the defendant: "I have you here now and I am going to kill you."   That defendant ran down the hall towards the back door, pursued by deceased; that as defendant reached the end of the hall and

attempted to open the screen door to get outside, the deceased cut him in the back with a knife, and that as defendant turned toward deceased, deceased cut him in the front part of the body; that defendant finally got the screen door open and fell to the ground and deceased sat on top of him; that deceased was considerably taller and larger than defendant; that deceased inflicted eight or nine wounds on the body of defendant with a knife, several of which were deep and of a serious nature; that defendant drew his knife from his pocket and cut deceased several times, one long cut being in the back and sufficient to cause death; that defendant and deceased arose from the ground, and here occurs the only conflict in the evidence:

The state produced Nannie Myers, who testified that the front of her house is right next to the back end of the Mexican restaurant; that there were windows on the left side of the house and that there was a fight taking place out back of the restaurant outside of her window; that she heard a noise and got up and went to the window and stood there and watched them, and that when they got up, one of them started to the house and the other hit him in the back and he fell; that she could not tell how far he went, and did not hear anything that was said.

The defendant, testifying for himself, denied that he struck the deceased after deceased got off of him and let him up.

Defendant assigns numerous errors, but for the purpose of this opinion it will only be necessary to consider one of them: "That the verdict is not sustained by the evidence, is contrary to the evidence and is contrary to law."

The state prosecuted apparently upon the theory that the fight was a mutual combat, and the trial court instructed the jury upon that theory of the case. There is

no evidence that the combat was mutual or that it was voluntarily entered into by the defendant. The undisputed evidence is that the defendant was not acquainted with, and had never seen, the deceased prior to the homicide; that deceased came into the restaurant with a knife in his hand and announced to defendant that he intended to kill him; that defendant fled and deceased pursued him to the back end of the hall, where he inflicted serious wounds upon the defendant while defendant was trying to open the screen door and escape; that as the door came open defendant fell out and deceased was on top of him, cutting him with his knife; that defendant did not draw his knife and strike the deceased until serious wounds had been inflicted upon his body by the deceased.

The state contends that since they both got up from the ground and deceased started towards the house, that the right of the defendant to kill in his defense ended. To this contention we cannot agree. In the first place, the record does not affirmatively show that the deceased said or did anything sufficient to indicate an intention to abandon the attack he had been making upon the defendant, nor is there anything in the record affirmatively showing that the deceased did anything to cause defendant to reasonably believe that the deceased was voluntarily withdrawing from the attack and would desist from the same thereafter. There is no evidence in the record to establish that the blow that killed deceased was struck after they arose from the ground. The facts and circumstances in the case indicate that the cut that caused the death of deceased was probably made while they were on the ground.

Section 1754, C. O. S. 1921, provides:

"Homicide is also justifiable when committed by any person in either of the following cases:

"First. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is."

Under the old common law no man could defend himself until he had retreated and until his back was to the wall; but this is not the law in free America. Here the wall is to every man's back. It is the wall of his rights; and where he is at a place where he had a right to be, and he is unlawfully assailed, he may stand and defend himself; and cases sometimes arise where he has the right, when unlawfully assailed, to advance and defend himself until he finds himself out of danger. Fowler v. State, 8 Okla. Cr. 135, 126 Pac. 831; Foster v. State, 8 Okla. Cr. 150, 126 Pac. 835.

Justifiable homicide in self-defense occurs when a person, without fault on his part in bringing on the contest or struggle, kills another under at least an apparent necessity, in order to save himself from death or great bodily harm. 21 Cyc. 800.

A man may repel force by force in defense of his person, habitation, or property, against any one, or many, who manifestly intend and endeavor, by violence or surprise, to commit a known felony on either. In such case he is not compelled to retreat, but may pursue his adversary until he finds himself out of danger, and if in the conflict between them he happens to kill him, such killing is justifiable. Kirk v. Territory, 10 Okla. 76, 60 Pac. 797, 806; Price v. State, 1 Okla. Cr. 358, 98 Pac. 447; Mulkey v. State, 5 Okla. Cr. 77, 113 Pac. 532.

Under the evidence in this case and the authorities above cited, defendant was justified as a matter of law in taking the life of the deceased, and could not be guilty of manslaughter in the first degree, nor any other crime, by

reason thereof. The verdict of the jury therefore is not sustained by the evidence and is contrary to the evidence and to the law.

The defendant was a foreigner and a stranger in a strange land, without powerful friends and without ability to make bond, and has been incarcerated in jail and in the penitentiary since the 22d day of September, 1929.

For the reasons stated, the cause is reversed and remanded, with directions to the trial court to dismiss the case and immediately discharge the defendant.

DAVENPORT, P. J., and EDWARDS, J., concur.